UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
    **CHERYL ANN AHOKAS,**                             Chapter 13 Case
                **Debtor.**                                       # 06-10232

Filed & Entered
On Docket
01/26/07

_____

*Appearances:*    Paul R. Morwood, Esq.                    Grant C. Rees, Esq.
                             South Burlington, Vt.                      Milton, Vt.
                             For the Debtor                                For Open Arms Construction, Inc.

**MEMORANDUM OF DECISION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

       The Bankruptcy Code permits an individual debtor to avoid a lien if that lien (a) is judicial and (b) impairs an exemption. See 11 U.S.C. § 522(f)(1). The question presented in the instant case is whether a judgment lien that includes (1) a jury award arising from the Contractor's Lien Law[1], 9 V.S.A. § 1921 *et seq.*, and (2) an award for attorney's fees, costs, and penalties arising under the Vermont Prompt Payment Act, 9 V.S.A. § 4001 *et seq.,* is avoidable under §522(f), in part, in toto, or at all.

       The circumstances giving rise to this contested matter are not all that unusual. In 2003, Cheryl Ann Ahokas ("Ahokas" or the "Debtor") contracted with Open Arms Construction, Inc. ("Open Arms" or the "Creditor") to construct an addition to her home. As a result of Ahokas' failure to pay invoices for certain work on the premises, Open Arms filed a writ of attachment against the property, commenced a state court proceeding, and won a $10,500 jury verdict, which was reduced to judgment. The state court subsequently issued an amended judgment on the complaint, in the amount of $54,874.81, adding costs, interest, penalties, and attorney's fees to the original figure, pursuant (at least in part) to the Prompt Payment Act. Shortly thereafter, Ahokas filed for bankruptcy relief, and moved pursuant to 11 U.S.C. § 522(f)(1)[2] to avoid the state court lien on her residential property (docs. # 10, 31). Open Arms filed an objection to the Debtor's motion to avoid its lien (doc. # 12) and an objection to confirmation of the Debtor's chapter 13 plan (doc. # 27). The parties have filed cross-motions for summary judgment (docs. # 45, 46). The essence of the parties' arguments focuses on whether the subject lien is judicial or statutory for purposes of the Bankruptcy Code, and to the extent that it contains both elements, whether the lien is subject to avoidance under § 522(f). The Debtor asserts that the amended judgment is a hybrid,

---

[1] "'Contractor's lien' is merely Vermont's statutory term for 'mechanic's lien' and the two terms are used interchangeably by the Vermont Supreme Court." Glinka v. Hinesburg Sand & Gravel, Inc. (In re APC Const. Inc.), 132 B.R. 690, 693 n.2 (D.Vt. 1991). This Court will use the terms interchangeably, as the parties have.

[2] All statutory citations herein refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

that the contractor's lien comprises only a small portion of the amended judgment and that the balance of the amended judgment is a judicially created lien that can be avoided in bankruptcy. The Creditor counters that the entire state court judgment arises from the contractor's lien, is statutory in nature, is an indivisible unitary lien, and is not avoidable in bankruptcy.

For the reasons set forth below, the Court holds that the state court amended judgment contains both statutory and judicial elements, that the contractor's lien portion is statutory and may not be avoided, and that the award of sums available only under the Prompt Payment Act constitutes a judicial lien, impairs the Debtor's exemption, and is therefore avoidable under §522(f).

## JURISDICTION

The Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(K).

## THE MATERIAL, UNDISPUTED FACTS

The Court finds the following undisputed facts constitute all facts material to the instant motions, and therefore, that summary judgment is proper.

### 1. The Contract Work

In February 1994, Ahokas purchased her home on Post Road in Westford, Vermont (the "Property"), for $99,900. (doc. # 10 memorandum, ¶ 1). On April 29, 2003, "Ahokas and Open Arms entered into a written contract whereby Open Arms would construct an addition on to Ahokas' home . . . for an estimated cost of $35,184." (doc. # 41, Statement of Agreed Upon Facts, ¶ 1 & Ex. A). "Beginning on or about April 29, 2003 and continuing for approximately six months, to on or about the end of October 2003, Open Arms supplied work and materials in the construction of the addition contemplated in the agreement . . . and also performed 'extras' and 'added jobs.'" (Id. ¶ 3). The parties agreed that "[t]he visible commencement of work at the Post Road premises began on April 29, 2003." (Id. ¶ 4) "Ahokas paid Open Arms at least the amount contemplated in the original agreement plus amounts towards extras and added jobs requested by Ahokas. Open Arms claims an additional amount for work performed at Ahokas' request; such additional amount was not paid." (Id. ¶ 5).

### 2. Writ of Attachment, State Court Proceedings, Judgment, and Amended Judgment

"In response to non-payment of invoices presented for additional work performed, Open Arms, through counsel, filed a mechanic's lien in the Westford Town Land Records, dated November 14, 2003, and recorded November 18, 2003 . . . in the amount of $31,786.77." (Id. ¶ 6 & Ex. B). Shortly after filing the mechanic's lien, Open Arms commenced an action against Ahokas in Chittenden Superior Court. The complaint contained counts for breach of contract and unjust enrichment, and a third count under the Vermont Prompt Payment Act, 9 V.S.A. § 4001 et seq., for costs, penalties, and reasonable

2

attorney's fees expended in pursuit of the action. (Id., Ex. C).[3] Open Arms asked the court to perfect its contractor's lien and to grant judgment in the amount of $46,545.36 representing the sums due plus attorneys fees, costs, penalties, and interest. (Id.) On January 26, 2004, Open Arms obtained a writ of attachment and order of approval perfecting the contractor's lien in the amount of $5,000. (Id., Ex. C[4]). The writ was recorded on January 27, 2004 in the Westford Town land records. (Id.)

Two years later, on January 31, 2006, "a Chittenden Superior Court jury rendered a verdict against the Debtor, in the amount of $10,500.00, which was reduced to a Judgment dated February 2, 2006." (Id., ¶ 8). Pursuant to the provisions of the Vermont Prompt Payment Act, "Open Arms subsequently obtained an Amended Judgment including attorney's fees, interest, and costs, in the amount of $54,874.81. Said Amended Judgment is dated April 13, 2006." (Id.). The amended judgment provides as follows:

> This action came on for trial before the Court and a jury, Ben W. Joseph presiding, and the issues having been duly tried and the jury on January 31, 2006 having rendered a verdict for plaintiff to recover of the defendant damages in the amount of $10,500.00. The jury rendered a verdict in favour of the plaintiff on the defendant's counterclaim.
>
> It is ORDERED AND ADJUDGED that the plaintiff recover of the defendant the sum of $10,500.00, plus $1,139.30 in plaintiff's costs of action, $2,804.85 in interest, $2,804.85 in penalties, and $37,625.81 in reasonable attorney's fees, totalling $54,874.81.

(Id., Ex. D). The amended judgment was "first recorded in the Westford Town land records on April 17, 2006 . . . this judgment was not certified final. Open Arms subsequently recorded a certified copy of the April 13 judgment order on July 17, 2006 . . ." (Id., ¶ 9).

### *3. The Quit Claim Deed; the Value of the Property in 2003 and in 2006*

In April 2003, the Property was appraised at $182,000.00. (Id. ¶ 10 & Ex. E). When the contractor's lien was filed in November 2003, "the mortgage on the Post Road premises had an[ ] approximate balance of $127,400." (Id. ¶ 12).

In August 2003, after Ahokas had signed the contract with Open Arms, but before the contractor's lien had been filed, Ahokas "conveyed the subject premises to herself and her parents, Emil and Jean, as Joint Tenants with Rights of Survivorship, by Quit Claim Deed." (Id., ¶ 14 & Ex. G). This deed was recorded in the Westford Town Land Records. (Id.). At the time of the transfer, Ahokas was 56 years old, her father was 89 years old, and her mother was 85 years old. (Id.). "In exchange for the Quit Claim Deed naming her parents as Joint Tenants with her, Debtor's parents provided her with a check dated August 11, 2003, in the amount of $35,000.00 which check was posted by the Drawee bank." (Id. ¶ 19 &

---

[3] While Open Arms did not specifically file a claim for foreclosure of the lien in state court, but rather filed, inter alia, a breach of contract cause of action, case law holds that an action brought under the mechanic's lien statute is not defeated by terming the action one in contract. Goodro v. Tarkey, 112 Vt 212, 22 A.2d 509, 511 (1941).

[4] The Statement of Agreed upon Facts contains two different documents denoted as Exhibit C: the state court complaint and the writ of attachment and order of approval.

3

Ex. H). Ahokas did not inform Open Arms of the conveyance. (Id. ¶ 16). At that point, "Ahokas was the owner of a one-third interest in the Post Road Premises. Two-thirds of the premises were owned by Ahokas' parents . . . [who] were not named in the proceedings brought by Open Arms." (Id. ¶ 14). The parents "were aware of the ongoing construction at the Debtor's residence at the time of the execution of the Quit Claim Deed and also at the time of their subsequent issuance of [the $35,000] check." (Id. ¶ 15). Debtor's father passed away on March 30, 2006, "leaving Debtor as the owner of a one half interest in the property." (Id. ¶ 18).

On June 12, 2006, the Property was appraised at $275,000.00, and the outstanding mortgage was approximately $107,737.00. Ahokas was and is the sole obligor on the mortgage. (Id. ¶¶ 11, 13).

### *4. The Bankruptcy Petition and Proceedings in Bankruptcy Court to Date*

Ahokas filed a chapter 7 petition on May 26, 2006. In July 2006, Ahokas moved to avoid the lien on the Property.[5] Open Arms objected, claiming its lien was not an avoidable judicial lien but rather a statutory lien which could not be avoided, and that it had taken all steps necessary to create, perfect, and maintain its lien on the Property (doc. # 12).

On August 2, 2006, the Court granted the Debtor's motion to convert to chapter 13 (docs. # 15, 16, 19). Open Arms objected to confirmation of the Debtor's chapter 13 plan, asserting that the plan failed to comply with § 1325(a)(5), as it improperly proposed to pay Open Arms only a fraction of its secured debt (doc. # 27). The Debtor opposed the objection to confirmation, and argued that "there is no equity securing such Lien and Open Arms is not a secured creditor." (doc. # 30 ¶ 9).

After a hearing on the motion to avoid lien, the parties filed a statement of agreed-upon facts (doc. # 41) and cross-motions for summary judgment (docs. # 45, 46). In her papers, the Debtor raises three main arguments. She asserts, first, that only a small portion of Open Arms' amended judgment is exempt from avoidance as a statutory (mechanic's) lien and that the greater portion of the amended judgment, namely the remaining $44,374.81 awarded for costs, interest, penalties, and attorney's fees pursuant to the Vermont Prompt Payment Act, is avoidable in bankruptcy as a judicial lien. Second, she claims that when the balance of the underlying mortgage is subtracted from the value of her interest in the Property[6], no equity remains upon which the lien could attach and therefore Open Arms' "alleged" lien is not actually secured. Third, Ahokas argues that even if there were equity to which the lien could have attached, the lien was not perfected and is no longer susceptible to perfection. It is the Debtor's position that the lien did not satisfy all of the procedural prerequisites of the mechanic's lien statutes because it

---

[5] In September 2006, Ahokas filed an updated motion to avoid lien (doc. # 31).

[6] For purposes of this argument, the Debtor denominates her ownership as a one-third interest, looking to the time of the filing of the mechanic's lien, rather than referring to the one-half interest she owned at the time her bankruptcy petition was filed.

4

neither contained a statement of the contract upon which the judgment was founded, as required pursuant to 9 V.S.A. § 1924, nor demonstrated substantial compliance with the lien law requirements (doc. # 45).

In its motion for summary judgment, Open Arms argues that when the state court supplemented the $10,500 jury award to include attorney's fees, costs, and interest it created a new judgment in the amount of $54,874.81, and that this creation of a unitary judgment is consistent with the Legislature's clear intent to have the ultimate measure of a mechanic's lien be the amount of the judgment order issued by the Superior Court. The Creditor also contends that there was equity in the Property to which the lien could attach, that it had a properly created and perfected contractor's lien on the property, and that the amended judgment was procedurally sufficient. As an alternative basis for relief, the Creditor alleges that the quit claim deed from the Debtor to herself and her parents, and her parents' payment of $35,000 for a two-thirds interest in a house that was valued at $182,000, was not a good faith transfer for consideration and represented a fraudulent conveyance which should be avoided for the benefit of creditors (doc. # 46).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

### DISCUSSION

Although the parties interpose a number of arguments, invoking multiple bases for relief, the dispositive issue is straightforward: is the state court amended judgment, to any extent, avoidable in bankruptcy as a judicial lien that impairs the Debtor's exemption? Because the parties have raised an issue of first impression, however, with respect to the proper treatment of a lien that includes awards under more than one statute, the Court must scrutinize several other inquiries before reaching the ultimate

5

question. To set forth its rationale methodically, the Court proceeds as follows: it examines the criteria for avoiding liens in bankruptcy and how the Bankruptcy Code differentiates the treatment of statutory and judicial liens; it assesses whether liens that have their genesis in the Contractor's Lien Law are statutory or judicial in nature and whether liens that have their genesis in the Prompt Payment Act are statutory or judicial in nature; it determines whether judgments such as the one before the Court which contain an award of damages under both the Contractor's Lien Law and the Prompt Payment Act may be bifurcated; it addresses the challenges the Debtor has raised as to the secured status, perfection and validity of the Creditor's contractor's lien; it decides whether the judicial lien portion of the judgment impairs the Debtor's exemption; it explores whether any of the other myriad arguments raised by the parties has merit or is in any way determinative of the issue at hand; and, finding none, at that point renders a decision on the salient issue of whether in fact the Debtor may avoid any portion of the state court amended judgment pursuant to the lien avoidance powers granted to individual debtors in § 522(f).

*A. Statutory Liens and Judicial Liens Are Distinct and Mutually Exclusive under the Bankruptcy Code*

The Bankruptcy Code's lien avoidance provision allows an individual debtor to avoid certain liens which attached pre-petition to property the debtor has declared exempt:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
> (1) a judicial lien . . .

11 U.S.C. § 522(f)(1).

The Code broadly defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). It more specifically defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," § 101(36), and a statutory lien as a "lien arising solely by force of statute on specified circumstances or conditions,. . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." § 101 (53). The three categories of liens (statutory liens, judicial liens, and security interests) "are mutually exclusive and are exhaustive except for certain common-law liens." Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Constr. Inc.), 112 B.R. 89, 122 (Bankr. D.Vt. 1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess, 312 (1997)).

*B. Judgments Arising under Vermont Contractor's Lien Law Are Statutory Liens*

It is well-settled that Vermont's contractor's/mechanic's liens are viewed as statutory liens under the Bankruptcy Code. See Glinka v. Hinesburg Sand & Gravel, Inc. (In re APC Constr., Inc.), 132 B.R. 690, 693 (D.Vt. 1991) ("Vermont statutory and decisional law make it clear that a contractor's lien under 9 V.S.A. § 1921-1928 is a statutory lien as defined by the bankruptcy Code."); Goodro v. Tarkey, 112 Vt.

6

212, 214, 22 A.2d 509, 510 (1941) (holding that "the right to acquire and enforce mechanic's liens is a creature of and dependent upon statute").

A statutory lien, such as a mechanic's lien, retains its statutory character even though the lienor must resort to judicial process to perfect the lien. This was eloquently explained in APC Constr., where the district court stated that "a Vermont statutory mechanic's lien exists at the moment the work on the property begins," although it "takes effect" after certain documents are filed in the proper office. APC. Constr., 132 B.R. at 694 (emphasis in original). The court continued that, up until and including the point where the lienor filed the documents asserting his or her claim, the lienor did not have to resort to judicial process to obtain the lien. The district court pointed out that if the lien was to remain in effect, the lienor had to attach the property by commencing a lawsuit to enforce the lien within three months from the filing of the documents or from when the last payment was due, pursuant to 9 V.S.A. § 1924. The lienor was then required to obtain a judicial order for a writ of attachment to perfect and preserve the lien. The district court held that this resort to the courts, however, did not transform a statutory lien into a judicial lien, observing "'[t]he result of a judicial process does not affect the statutory being of a contractor's lien. The obtaining of a writ of attachment to perfect a statutory lien, although judicial in nature, is just another statutory step from inchoateness to perfection.'" Id. (quoting APC Constr., 112 B.R. 89). Hence, this Court concludes that the portion of the subject lien that arises from the Vermont mechanic's lien statute is a statutory lien and, therefore, is not avoidable under § 522(f).

Ahokas asserts that, at most, only a small portion of the amended judgment, perhaps as little as $5,000, the amount of the initial mechanic's lien, qualifies for contractor's lien treatment. The Court rejects the Debtor's unsupported argument that the $5,000 initial mechanic's lien rather than the $10,500 judgment is the amount of the statutory lien. The order of approval filed with the writ recites that the state court "finds there is a reasonable likelihood that the Plaintiff will recover judgment in an amount equal to or greater than the amount requested to be attached" (doc. # 41, Ex. C). In other words, the writ is a preliminary and low figure that attaches to the subject real property until the actual judgment based on the litigation is filed. See, e.g., Rainbow Trust v. Moulton Const., Inc. (In re Rainbow Trust), 200 B.R. 785, 789 (Bankr. D.Vt. 1996), where this Court interpreted VRCP 4.1 (a), (b) and (c) (discussing availability, issuance, and form of writs of attachment), and rejected the argument that the attachment amount was the maximum amount recoverable from the property since the attachment was effected only to "satisfy any judgment for damages and costs which the plaintiff may recover" (quoting VRCP 4.1(a)).

Here, the Court finds that the amount of the contractor's lien is no less than the $10,500 jury award, and it is a statutory lien and that it is, therefore, beyond the reach of the Bankruptcy Code's lien avoidance powers.

### *C. Judgments Arising under the Vermont Prompt Payment Act Are Judicial Liens*

The next question is whether the portion of the amended judgment that arises from the Prompt Payment Act is likewise a statutory judgment, or is instead, as the Debtor asserts, a judicial lien that is subject to avoidance under § 522(f).

When seeking to understand the meaning of a statute, the court's "primary objective is to effectuate the intent of the Legislature." Weale v. Lund, 904 A.2d 1191, 1193 (Vt. 2006). The first step "is to look to the language of the statute itself, and proceed on the presumption the Legislature intended the plain, ordinary meaning of that statute. In general, [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective." Id. at 1193-94.

We begin our statutory construction analysis by comparing and contrasting the Contractor's Liens Law with the Prompt Payment Act. To start, we observe that the former is more deeply established in Vermont jurisprudence. The contractor's lien statutes, 9 V.S.A. § 1921-1928, have been extant since at least the 1850s (see Greenough, Cook & Co. v. Nichols, 30 Vt. 768 (1858)). Their purpose is familiar. When a mechanic or contractor enters into a contract to improve real property or to furnish material and labor for improvements, this statute allows the contractor "to have a lien upon such improvements and the lot of land on which [the improvements] stand" in order to secure payment for those improvements or materials. 9 V.S.A. § 1921(a). "The lien extends to the portion of the contract price remaining unpaid at the time the property owner receives notice" of the lien. APC Constr., 132 BR at 693. Section 1921 sets out the extent of the lien, the notice to be afforded the owner of the property, the amount of time the lien is in effect, and the property to which the lien attaches. Other provisions set out the procedures the contractor must follow to perfect the lien. Of significance to this analysis is the fact that the contractor's lien statutes do not allow recovery for attorney's fees, penalties, or costs of litigation.[7] As the Vermont Supreme Court stated in Newport Sand & Gravel Co. v. Miller Concrete Constr. Inc., 159 Vt. 66, 69, 614 A.2d 395, 397 (1992), "The[ ] general intent [of the mechanic's lien statutes] is to provide limited protection for supplies to construction projects by giving them a tool to secure payment for their products . . ." (emphasis added). The Vermont Supreme Court, however, has held that prejudgment interest is awarded in a breach of contract action as a matter of right "when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage." Id. at 71, 614 A.2d at 398. The Vermont high court also looked favorably on awarding interest to suppliers in actions to foreclose on mechanic's liens, holding that it was a matter for the trial court's discretion. Id. at 72, 614 A.2d at 399. This Court deems an award of interest in connection with a

---

[7] The Court notes that the writ of attachment filed in the state court provided that the goods or real estate of Ahokas would be attached to the value of $5,000 "to be held to satisfy any judgement [sic] for principal, cost, attorney's fees, and interest that may be recovered by Plaintiff, Open Arms Construction Inc." (doc. # 41 Ex. C). This document was signed by a deputy clerk, not a judge. Because the lien statutes do not allow for recovery of costs and attorney's fees, the Court treats the inclusion of these damages as an error.

8

contractor's claim to be appropriate under the Contractor's Lien Law and considers the portion of the amended judgment that is denominated as interest to be part of the statutory lien.

The Prompt Payment Act is different from the Contractor's Lien Law in many critical regards. First, it is a statute of quite recent vintage, passed by the State Legislature in 1991 and taking effect on January 1, 1992. Moreover, while the Contractor's Lien Law and Prompt Payment Act statutes are both located in Title 9 of the Vermont Statutes, they are located in different chapters. The Contractor's Lien Law is found in Chapter 51, entitled "Miscellaneous Liens," which encompasses contractor's liens, artisan's liens, wage liens, liens on logs, liens on lumber products, liens on ships, federal liens, and liens on animals. The Prompt Payment Act is found in Chapter 102, entitled "Construction Contracts." Each statute has an editor's note that cross-references the other, but that is the only reference either statute has to the other. Certainly, if the Legislature had wished to amend the mechanic's lien statute to include the recovery allowed by the Prompt Payment Act, it could have done so. Instead, it created a new chapter outside the mechanic's lien provisions to allow those additional remedies.

While the events supporting the creation of a contractor's lien and an award under the Prompt Payment Act may arise from a common core of facts – a party's failure to pay a contractor – the contractor's lien is limited to the unpaid amount due for the work on that property, while the Prompt Payment Act allows for recovery of costs, attorney's fees and expenses. Of particular pertinence to this case is 9 V.S.A. § 4007(c), which provides:

> Notwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses.

The text of the statute unequivocally contemplates resort to judicial process in order to determine which party, if any, "substantially prevailed" and what constitutes "reasonable attorney's fees" in each case. See Fletcher Hill, Inc. v. Crosbie, 178 Vt. 77, 82, 872 A.2d 292, 296 (2005) (in reviewing § 4007(c) of the Prompt Payment Act, the court held that "whether any party to a lawsuit substantially prevailed is left to the trial court's discretion.") and The Electric Man v. Charos, 895 A.2d 193, 196 (Vt. 2006) (once a court determines that a party has "substantially prevailed," "an award of attorney's fees is mandatory.").

It appears that the legislature enacted the Prompt Payment Act to provide contractors with greater remedies, as is evidenced from a review of the "Record of Action on Bill," the written notes from the various legislative committees that considered the Prompt Payment Act in bill form before it became law. The notes of the Senate General Affairs and Housing Committee discussion indicate that Committee members were aware that the bill would permit a contractor to recover attorney's fees and costs, which had previously been unavailable in such litigation as a result of Vermont's adherence to the "American

9

Rule" (i.e., that each litigant bears the cost of his own expenses absent a statutory or contractual exception or bad faith. See DJ Painting, Inc. v. Baraw Enterprises, Inc., 172 Vt. 239, 246, 776 A.2d 413, 419 (2001)). The bill provided the necessary statutory basis to counter the American Rule, thereby allowing contractors to recover attorney's fees. See Record of Action, Sen. Gen. Affairs & Housing Comm., Feb. 6, 1991. See also Electric Man, 895 A.2d at 196 ("The [Prompt Payment Act] statute creates an exception to the 'American Rule,' which generally provides that parties to litigation are responsible for their own attorneys' fees regardless of the litigation outcome."). In sum, both the text and placement of this statute distinguish it from the contractor's lien statute.

This Court has previously acknowledged that some judgments may be comprised of awards that come into being as different kinds of liens. See APC Const., 112 B.R. at 124 ("The possibility also exists that two independent liens are present, each to be measured by different provisions of the Code.").

Taking into account the essential role of the judicial process in awards under the Prompt Payment Act, the placement of the Prompt Payment Act outside the mechanic's lien statute in Vermont's statutory framework, and prior court determinations that judicial and statutory liens are exclusive, the Court concludes that a judgment based on an award under the Prompt Payment Act is judicial, not statutory, in nature. Accordingly, an award under this statute is subject to avoidance under § 522(f)(1).

### D. The Amended Judgment May Be Bifurcated into its Component Parts

The amended judgment provided for an award of $54,874.81, comprised of the following: $10,500 attributable to the jury award on the contractor's lien, $2,804.85 in interest, $1,139.30 in costs, $2,804.85 in penalties, and $37,625.81 in reasonable attorney's fees.[8] As noted above, a judgment based upon the Contractor's Lien Law may include interest, but any award of expenses and reasonable attorney's fees are available only through the Prompt Payment Act. See APC Constr., 112 B.R. 89. Accordingly, the Court bifurcates the judgment into two liens: the lien arising under the Contractor's Lien Law that consists of the jury award plus interest for a total of $13,304.85; and the lien arising under the Prompt Payment Act that consists of the award of attorney's fees, penalties and costs, for a total of $41,569.96.

### E. The Contractor's Lien is Valid

Ahokas claims that even if part of the amended judgment were a statutory lien, the lien would not be valid. She alleges the Creditor failed to comply with the required statutory formalities and in particular that the amended judgment (a) did not contain a statement of the contract upon which the judgment was founded; (b) did not substantially comply with the statute's filing requirements; and (c) was never perfected and is no longer susceptible of perfection. Open Arms acknowledges that the judgment did not

---

[8] The Court notes that the facts presented in this case are rather unusual in that the recorded amended judgment can easily be separated into component parts. If the record had not so clearly revealed that the recorded judgment was composed of multiple elements, emanating from two distinct statutes, the Court would have needed to have held an evidentiary hearing to obtain the information necessary to make a determination of whether all or part of the judgment was a judicial lien subject to avoidance.

10

contain "a brief statement of the contract upon which the same [lien] is founded," 9 V.S.A. § 1924, but asserts that the judgment nevertheless substantially complied with the statute as both the notice of the mechanic's lien and writ of attachment referred to the Property; the writ, order of approval, and certified copy of the judgment order all bore the same docket number; and case law holds that substantial compliance with the statute is sufficient to create an effective mechanic's lien. The Creditor also contends that the lien was properly perfected by the judgment order, a certified copy of which was recorded within five months of issuance as required by the lien statute.

Section 1924 of the lien statute provides that the contractor-lienor must obtain a writ of attachment within three months of filing the written memorandum to perfect his lien, and that if the lienor "obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded." 9 V.S.A. § 1924 (emphasis added). An important aspect of § 1924 is that, in order to perfect the lien, the lienor must do so "on motion and notice." APC Constr., 112 B.R. at 103.

This Court has previously addressed the question of whether a lien is defective because the judgment did not contain a brief statement of the contract upon which the judgment is founded. In Canney v. Engelberth Constr. Inc. (In re Rome Family Corp.), 2005 WL 1595728, *6-7 (Bankr. D.Vt. Mar. 7, 2005), the plaintiff charged that the absence of "a brief statement of the contract" in the state court judgment was a fatal omission. The defendant pointed out that not only was that position unsupported by Vermont case law, but that the substantial record of litigation between the parties had clearly identified the contract underlying the judgment, which supported its position that failure to identify the contract within the four corners of the judgment was not fatal. Id. at *6. This Court observed that the final judgment referred to the litigation between the parties, as did the notice of lien and the writ, both of which had been filed in the land records, and held, "[w]hile the Final Judgment does not strictly comply with the statute, enough information was provided to give adequate notice and to substantially comply with the statute. Therefore it is adequate." Id. at * 7.

Similar to the circumstances in Rome Family Corp., the record of litigation between Open Arms and Ahokas in state court clearly identifies the contract underlying the amended judgment. The mechanic's lien, filed in the Town land records prior to the litigation, specified that Open Arms provided materials and labor to Ahokas. The recorded amended judgment refers to the litigation between the parties as having been resolved by a verdict for the plaintiff. The amended judgment contains the same state court docket number as Ahokas' complaint, order of approval, and writ of attachment. The writ, order of approval, and amended judgment, filed in the land records, provided sufficient notice of the nature and scope of the contract to Ahokas and any third parties.

Accordingly, this Court holds that Open Arms substantially complied with the statute and its lien is valid (except to the extent avoided herein).

11

In a related vein, Ahokas argues, in the alternative, that the recorded amended judgment is procedurally defective because it did not comply with 9 V.S.A. § 1925. This provision of the lien law requires a claimant to record a certified copy of its judgment "[w]ithin five months after the date of such judgment." Ahokas does not claim that the judgment was defective because it was not recorded within five months of issuance; the record would not support such an allegation. Rather, she asserts that because the amended judgment, as recorded, did not contain the "statement relating to the contract" language referred to above, it is defective and Open Arms can no longer file a proper judgment containing the proper language because the five month period for recording the judgment has expired.[9] As this Court has found that the amended judgment "substantially complied" with the statute, even without explicit reference to the contract, Ahokas' second procedural challenge to the lien fails. The Court reiterates its conclusion that the mechanic's lien and the recorded amended judgment are procedurally sufficient and valid (except to the extent avoided herein).

### *F. The Judicial Lien is Secured*

In addition, Ahokas argues that even if the $10,500 jury verdict is found to be a statutory lien, she had no equity in the Property to secure the lien and hence Open Arms' claim against her is unsecured. She reasons as follows: at the time of the January 2006 jury verdict, she owned a one-third interest in the Property, and it was not until her father died, in March 2006, that she owned one-half of the Property. The lien filed against her one-third of the property should not "migrate" to cover the interest she inherited. She further argues that her one-third interest of the Property (valued at $275,000) was worth $91,667 on the date of the jury verdict, and subtracting the then $107,737 balance of the first mortgage from $91,667 leaves no equity upon which the lien can attach and therefore Open Arms' claim against her is not secured.

It is irrelevant for purposes of this action what interest Ahokas may have had in the property at the time of the jury verdict; the critical question is what assets did Ahokas own when her bankruptcy estate came into being and she acquired the right to avoid liens that impaired her exemptions. See Colliers on Bankruptcy ¶ 522.05[1] (15th ed. rev. 2006). A bankruptcy estate contains all legal or equitable interest of the debtor in property "as of the commencement of the estate." § 541; Marine Midland Bank v. Scarpino, 113 F.3d 338, 340 (2d Cir. 1997). Such "[p]roperty interests are created and defined by state law." Butner v. United States, 440 U.S. 48, 55 (1979). When she filed her bankruptcy petition, she owned a one-half interest in the $275,000 Property and thus her interest in the Property as of the filing date was $137,500. Subtracting the $107,737 mortgage, upon which she was the sole obligor, from the value of her

---

[9] To the extent Ahokas may be asserting that the recorded judgment is defective because it is not marked "final," the lien statutes contain no such requirement. See Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc., 216 B.R. 77, 83 n.5 (2d Cir. BAP 1997) ("Pursuant to § 1925, Moulton also properly recorded the Judgment within the five month statutory period. As noted by the bankruptcy court, the Judgment was not required to be either final or contain a notation as to the date of its finality.").

12

interest in the Property, we conclude that her equity in the Property, at the crucial point in time, was $29,763. This is more than the amount of Open Arms' judicial lien and hence the Creditor's judicial lien was in fact fully secured. See § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . .").

### G. The Judicial Lien Impairs the Debtor's Exemption

The Debtor identified the Property on Schedule A and claimed it exempt as her homestead on Schedule C. The Court has already found that the Debtor's interest in the Property as of the date of the bankruptcy filing had a value of $137,500. The Debtor claimed an exemption in the amount of $29,763. No party has objected to that exemption within the statutory time period for doing so and therefore the exemption is deemed allowed. See Fed. R Bankr Proc. 4003(b); Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44 (1992). The formula for determining impairment of exemptions under the Bankruptcy Code is set forth in § 522(f)(2)(A). Pursuant to that provision, a judicial lien shall be considered to impair an exemption to the extent that the sum of (i) the subject lien ($41,569.96), (ii) all other liens on the property ($107,737 mortgage) and (iii) the amount of the exemption that the Debtor could claim if there were no liens on the property ($37,500)[10], exceeds the value that the Debtor's interest in the property would have absent any liens ($137,500). Here, the sum of the liens plus her maximum exemption is $186,806.96 and the Debtor's interest in the property would have been $137,500 in the absence of any liens. Thus, under the § 522(f) formula, the instant judicial lien does impair the Debtor's exemption, and is subject to avoidance.

### H. Fraudulent Conveyance Arguments Are Misplaced

Although the parties debate in their cross-motions for summary judgment whether Ahokas' quit claim deed to herself and her parents constituted a fraudulent conveyance under Vermont law, 9 V.S.A. § 2289, the Creditor never raised this issue in its objection to confirmation of the Debtor's chapter 13 plan or in its objection to the motion to avoid judicial lien. Moreover, the statement of undisputed facts fails to set forth sufficient material facts to address this question. Therefore, the Court finds the fraudulent conveyance arguments are not properly before the Court at this time, and denies relief sought upon those arguments.

### I. Additional Arguments

Both Ahokas and Open Arms have raised a smattering of additional arguments. The Court has considered all of these arguments and specifically finds all arguments not addressed above to be without merit.

---

[10] Since the Debtor owned a one-half interest in the Property she was entitled to an exemption capped at one-half of the total homestead exemption available under state law, or $75,000 per 27 VSA §101. In re Norton, 327 BR 193 (Bankr, D.Vt 2005)

13

## CONCLUSION

Based upon the foregoing, the Court holds that the state court amended judgment contains two distinct lien components, that it is proper to bifurcate the amended judgment into its statutory lien and judicial lien components, and that only the judicial lien may be avoided under § 522(f) of the Bankruptcy Code. The Court further holds that the portion of the judgment that arises under the Contractor's Lien Law is a statutory lien, that it accounts for $13,304.85 of the total state court amended judgment, and that it may not be avoided under § 522(f). By contrast, the Court holds that the portion of the state court amended judgment that arises under the Prompt Payment Act is a judicial lien, that it accounts for $41,569.96 of the total state court amended judgment, and that it may be avoided under § 522(f). Since the Court also holds that this judicial lien impairs the Debtor's exemption, the Debtor is entitled to avoid that lien pursuant to § 522(f). Accordingly, the Court will enter an Order (i) granting in part and denying in part each of the cross-motions for summary judgment; (ii) avoiding the portion of the state court amended judgment that represents sums only available under the Prompt Payment Act, as a judicial lien; (iii) denying avoidance of that portion of the state court amended judgment that constitutes the contractor's lien, since it is a statutory lien; (iv) sustaining in part and overruling in part the Creditor's objection to the Debtor's chapter 13 plan; and (v) setting a deadline for the filing of an amended plan consistent with this decision, so that the chapter 13 case may proceed.

This constitutes the Court's findings of fact and conclusions of law.

January 26, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

14